**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| | * | |
| WILD THINGS SNACKS, Inc., a | * | Civil Action No.   22-cv-1053 |
| Washington Corporation | * | |
| | * | JURY TRIAL DEMANDED |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| BARON INTERNATIONAL, D.O.O., d/b/a | * | |
| TOUCHED BY NATURE, | * | |
| a Slovenian Limited Liability Company, | * | |
| and THRIVE BRANDS, LLC, | * | |
| An Illinois Limited Liability Company | * | |
| | * | |
| Defendants. | * | |
| | * | |

**COMPLAINT**

Plaintiff, Wild Things Snacks, Inc. ("Plaintiff" or "SkinnyDipped") hereby files this Complaint against Defendants Baron International, D.O.O., d/b/a Touched By Nature ("TBN") and Thrive Brands, LLC ("Thrive")(collectively, "Defendants") and alleges as follows:

**INTRODUCTION**

1. Plaintiff files this action to seek injunctive relief and monetary damages based on Defendants' trademark infringement as well as their blatant and unlawful misappropriation of Plaintiff's unique, distinctive and nonfunctional trade dress in connection with the sales and/or offering for sale of a lower quality knock-off of Plaintiff's well-known nut-based snack foods. The requested relief is warranted and based upon Defendants' violations of the federal Lanham Act for trademark infringement, trade dress infringement, unfair competition and false designation of origin, and violations of the Illinois Uniform Deceptive Trade Practices Act.

1

2.     In 2014, SkinnyDipped launched an innovative lightly coated but highly flavorful almond-based snack food called SKINNYDIPPED ALMONDS®.    Since that time, SkinnyDipped has released an extensive line of nut-based snack food products under the SKINNYDIPPED® family of marks, including SKINNYDIPPED ALMONDS®, SKINNYDIPPED CASHEWS® and SKINNYDIPPED PEANUTS®, among others (hereafter, the "SKINNYDIPPED® Trademarks").

3.     SkinnyDipped's products have enjoyed massive commercial success and wide publicity throughout the United States, receiving endorsements and publicity from numerous celebrities, social-media influencers, and many others. In 2019, Inc. magazine named SkinnyDipped on its list of "fastest growing companies."

4.     Defendant, TBN is a Slovenian company that manufactures and sells nut-based products.  Recently, TBN began promoting a knock-off of SkinnyDipped's products under the names ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS (TBN's "Infringing Products").  In doing so, TBN has copied nearly every aspect of SkinnyDipped's products, flavors, attributes, product names, imagery, and packaging.

5.     TBN also promotes its Infringing Products on social media using the SKINNYDIPPED® Trademarks as Hashtags (*e.g.* posts promoting the Infringing Products contain the hashtags #SKINNYDIPPED and #SKINNYDIPPEDALMONDS).

6.     Upon information and belief, Defendant Thrive is TBN's U.S. distributor and is selling TBN's Infringing Products throughout the United States.

7.     Defendants' unlawful actions amount to a blatant, willful, and conscious disregard for Plaintiffs rights, and were knowingly and intentionally taken to piggyback off of the enormous popularity, goodwill and success of Plaintiff's products, trademarks, and highly

recognizable, unique and valuable trade dress. Such conduct has caused and continues to cause confusion to the public and injury to Plaintiff.

8.       Plaintiff hereby seeks to curtail the unlawful activity by preventing Defendants continued infringement and misappropriation of Plaintiff's valuable SKINNYDIPPED® Trademarks and Trade Dress rights. Defendants' misconduct is harmful and will cause Plaintiff injury, including by lost sales, diminished reputation in the marketplace and the dilution of its valuable intellectual property, unless and until this Court enjoins it, both preliminarily and permanently. By this suit, Plaintiff is seeking injunctive relief, compensatory damages, enhanced damages, attorneys' fees and costs, relief authorized under federal and Illinois law, and any relief that this Court may deem just and proper.

## JURISDICTION AND VENUE

9.       This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 § U.S.C. 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

10.       This Court has personal jurisdiction over each Defendant.  Thrive is an Illinois limited liability company that is organized under the laws of Illinois, located in Illinois, and conducts business generally (including the complained of activities) in the state of Illinois and this Judicial District.  Upon information and belief, TBN conducts business in Illinois and within this Judicial District, namely by contracting with Thrive (an Illinois entity) to serve as its U.S. distributor of the Infringing Products (throughout the United States and within Illinois), and

by operating an online web store and social media profiles which, upon information and belief, are publicized to and accessed by consumers within this Judicial District.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. This Court may properly exercise personal jurisdiction over Defendants because Thrive resides in this District and both Defendants directly target business activities within this District and toward Illinois consumers.

## PARTIES

12.     Plaintiff Wild Things Snacks, Inc. is a Washington corporation with a principal place of business at Suite 200A 5221 Ballard Ave NW, Seattle, WA 98107.

13.     Upon information and belief, Defendant Baron International D.O.O. is a limited liability company organized under the laws of Slovenia that also does business under the name "Touched By Nature" and has a principal place of business at Obrezje 4, SI-1433, Radece Slovenia.

14.     Upon information and belief, Defendant Thrive Brands, LLC is an Illinois limited liability company with a principal place of business at 1746 Central Ave., Willmette, IL 60091.

15.     Plaintiff's investigation regarding the true identities and possible corporate structures for each of the Defendants is ongoing, and Plaintiff will take appropriate steps to amend this Complaint if additional identifying information is subsequently discovered.

## FACTUAL ALLEGATIONS

### Plaintiff's SKINNYDIPPED® Products, Trademarks, and Trade Dress

16.     In 2014, SkinnyDipped launched an innovative lightly coated but highly flavorful almond-based snack food called SKINNYDIPPED ALMONDS®.  Plaintiff's products are lightly coated with chocolate and cocoa and come in a variety of flavors.  SKINNYDIPPED®

products were superior to traditional chocolate-covered nut-based snack foods because their coating was significantly thinner, making them lower in sugar and calories than traditional chocolate-covered nut-based snack foods at the time. Since launching, SkinnyDipped has released an extensive line of similar nut-based snack food products under the SKINNYDIPPED® mark, including SKINNYDIPPED CASHEWS® and SKINNYDIPPED PEANUTS®.

17. SkinnyDipped owns several federal registrations in the United States for its well-known family of SKINNYDIPPED® Marks, including: SKINNYDIPPED® (U.S. Reg. No. 6,036,538); SKINNYDIPPED ALMONDS® (U.S. Reg. No. 5,840,055); SKINNYDIPPED CASHEWS® (U.S. Reg. No. 6,302,298); and SKINNYDIPPED PEANUTS® (U.S. Reg. No. 6,302,297).

18. In 2016, SkinnyDipped created a unique and highly distinctive eye-catching packaging for its products (referred to herein as the SkinnyDipped "Trade Dress") shown below:



19.     SkinnyDipped has exerted an enormous amount of time, money and effort to extensively and continuously promote and utilize the SKINNYDIPPED® brand and SkinnyDipped Trade Dress in conjunction with its Products in the United States and in Illinois.

20.     In 2019, SkinnyDipped ranked #32 in the Inc. 5000 list of "fastest growing companies" noting SkinnyDipped's staggering 1,550% growth over three years.

21.     By 2020, food industry media reports showed that SkinnyDipped had raised over $10,000,000 in investment capital to keep up with surging demand for its products, including an investment from pop music star Shakira.[1] That year, SkinnyDipped was featured on USA Today, as well as in Forbes, Glamour, Food Network, E! News, Good Housekeeping, Self, and countless other nationwide media outlets.

22.     As a result their extensive promotion and popularity, SKINNYDIPPED® products are now sold throughout the U.S., with distribution in over 21,000 stores, including national retailers such as Target, Kroger, Walmart, Safeway, Albertsons, Stop and Shop, Walgreens, CVS, HEB, and Rite Aid.

23.     Due to their extreme popularity, SkinnyDipped's SKINNYDIPPED® products have won numerous awards.  For example, in the past year alone, SkinnyDipped products were awarded the "Eat This Not That 2022 Food" Award (Best Sweet Snack); the "Progressive Grocer 2021 Editor's Pick" Award (Best New Product); the 2021 "Cosmo Snack" Award; and was a 2021 "NEXTY" Award Finalist.

24.     The success of SkinnyDipped's products, the SKINNYDIPPED® Trademarks, and the SkinnyDipped Trade Dress is undisputable. SkinnyDipped's products have enjoyed massive commercial success and wide publicity throughout the United States, garnering the

endorsements of numerous celebrities, social-media influencers, and many others. For example, actress Olivia Munn recently posted an unsolicited video highlighting the SKINNYDIPPED ALOMONDS® dark chocolate and peanut butter flavor and Trade Dress receiving nearly 40,000 "likes." *See* below:



25.     Consumers widely recognize the SKINNYDIPPED® trademarks and the highly distinctive SkinnyDipped Trade Dress as indicators of the products' origin and quality coming from SkinnyDipped.     Indeed, the SkinnyDipped Trade Dress has acquired substantial recognition and secondary meaning and has become famous. The SKINNYDIPPED® products

---

[1]https://www.tasteradio.com/insider/2020/taste-radio-insider-ep-96-how-skinny-dipped-made-millions-at-target-after-sneaking-into-google/

and Trade Dress continue to receive a significant amount of unsolicited media coverage in various newspapers, magazines, online articles, and popular social media platforms, such as Today, E! News, BuzzFeed, Reader's Digest, Food Navigator, Eating Well, and dozens of others.

26.     By virtue of SkinnyDipped's persistent efforts and exclusive use of the SkinnyDipped Trade Dress, and the highly valuable goodwill and substantial secondary meaning acquired as a result, SkinnyDipped owns trade dress rights in the design and appearance of its packaging, which consumers have come to uniquely associate with SkinnyDipped.

27.     Specifically, Plaintiff has trade dress rights in the overall look, and appearance of the SkinnyDipped Trade Dress, including but not limited to: (a) the inclusion of the SKINNYDIPPED® Trademark(s); (b) the layout and placement of word and graphical elements of its product label (including a script font); (c) which prominently display a center-positioned lifelike image of a nut which is partially coated in chocolate and/or cocoa in a distinctive manner; (d) all of which appears against a vibrant background color that corresponds to the product flavor variation.

**Defendants' Unlawful Conduct**

28.     Since launching, SkinnyDipped's Products have been imitated by knockoff products seeking to capitalize on the demand for lower calorie, lower sugar, high protein alternatives to traditional chocolate-covered nuts.

29.     In fact, TBN recently launched several knockoffs of SkinnyDipped's Products, which they call ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS (the "Infringing Products").

30.     TBN operates an E-Commerce website located at https://touchedbynature.eu/ (the "Website") which is accessible to consumers in the United States. The Website offers "shipping" options for consumers located in the United States. Upon information and belief, TBN sells and has sold the Infringing Products to consumers in the United States via the Website.

31.     TBN also promotes the Infringing Products to consumers in the United States on social media, including on Instagram at https://www.instagram.com/touchedbynature.eu.

32.     TBN recently contracted with Thrive to distribute the Infringing Products throughout the United States. Thrive is currently attending U.S. trade shows in an effort to generate publicity and solicit orders from retailers to carry the Infringing Products.

33.     The packaging of Defendants' Infringing Products, as shown on TBN's Website and Instagram profile, closely imitates Plaintiff's distinctive Trade Dress.

| Examples of Plaintiff's Trade Dress | Examples of the Infringing Products |
|---|---|
|  | |






34.     As shown above, Defendants' Infringing Products copy Plaintiff's Trade Dress and its distinctive elements almost verbatim.  Defendants appear to have a slightly altered version of the same packaging which upon information and belief is being used to test-market

U.S. sales. Both variations of the product packaging are confusingly similar in appearance to the SKINNYDIPPED® Trade Dress, prominently featuring a lifelike image of a partially covered nut, and the confusingly similar ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS marks.

35.     The foregoing actions are likely to confuse consumers and create the possibility that Plaintiff's SKINNYDIPPED® Trademarks and Trade Dress will no longer serve as a unique identifier of Plaintiff's products to consumers. Even worse, the inferior quality of Defendants' products could tarnish the reputation that Plaintiff has worked extremely hard to develop, and on which Plaintiff has spent millions of dollars in promotions and advertising. As a result, Plaintiff will suffer reputational harm, lost sales, and foregone business because of the improper and negative associations between Plaintiff's brand and the inferior knockoffs.

36.     Defendants' blatant misappropriation of Plaintiff's valuable trade dress is done without Plaintiff's permission. At no time did Defendants obtain a license or any other permission or authorization from Plaintiff that would allow Defendants to make and sell products with confusingly similar names or having the same look and feel as genuine SKINNYDIPPED® products.

37.     Defendants' use of marks that are confusingly similar to the SKINNYDIPPED® Trademarks and copying of Plaintiff's Trade Dress has been intentional, willful, and malicious. Defendants' bad faith is evidenced by their nearly exact copying of the well-known SKINNYDIPPED® Trade Dress with full knowledge of Plaintiff's intellectual property rights, and the fact that they chose to engage in these unlawful conducts to deceive and mislead the public into believing that their products are sponsored, licensed, authorized by, affiliated, connected, or otherwise associated with SKINNYDIPPED®.

38.     Defendants' conduct has been willful and intended to divert and confuse Plaintiff's customers.   For example, TBN enabled e-commerce transactions through its Instagram page where it explicitly calls its product "**SKINNY DIPS**."   TBN also posts images of the Infringing Products on its Instagram page using the hashtags "#SKINNYDIPPED" and "#SKINNYDIPPED ALMONDS."   They do this so that their Infringing Products are shown to consumers searching for genuine SKINNYDIPPED® products.

39.     Defendants further attempt to confuse consumers by including the phrase "Skinny Coated" in close proximity to the names "ALMOND DIPS", "CASHEW DIPS" and "HAZELNUT DIPS".

40.     Plaintiff had used its SKINNYDIPPED® trademark and Trade Dress extensively and continuously before Defendants began selling or offering to sell similar products in the United States. Plaintiff's Trade Dress had also become famous and acquired secondary meaning in the United States before Defendants commenced their unlawful activities.

41.     Defendants' infringement has caused Plaintiff irreparable harm and will continue to cause irreparable harm to its reputation, the good will of Plaintiff's trade dress, the ability of that trade dress to serve as a source indicator for the products associated with that trade dress, and Plaintiff's ability to control the use of the trade dress so that it may function as a source identifier for Plaintiff's brand and products.

## CAUSES OF ACTION

### COUNT I
### Federal Trademark Infringement (15 U.S.C. § 1114)
### against all Defendants

42.     Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

43.     This is a trademark infringement action against Defendants based on Defendants' unauthorized use in commerce of marks that are confusingly similar to Plaintiff's federally registered SKINNYDIPPED®, SKINNYDIPPED ALMONDS®, and SKINNYDIPPED CASHEWS® trademarks in connection with the sale, offering for sale, distribution, and/or advertising of Infringing Products. Plaintiff's SKINNYDIPPED® Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from products sold or marketed under the SKINNYDIPPED® Trademarks.

44.     Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing infringements of the SKINNYDIPPED Trademarks without Plaintiff's permission, namely, ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS.

45.     Plaintiff is the exclusive owner of the SKINNYDIPPED® Trademarks. Plaintiff's United States Registrations for the SKINNYDIPPED Trademarks (**Exhibit 1**) are valid and subsisting. On information and belief, Defendants have knowledge of Plaintiff's rights in the SKINNYDIPPED® Trademarks and have willfully infringed and intentionally used infringements of the SKINNYDIPPED® Trademarks.

46.     Defendants' willful, intentional, and unauthorized use the ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS marks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Infringing Products among consumers and the general public.

47.     Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

48.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SKINNYDIPPED® Trademarks.

49.     The injuries and damages sustained by Plaintiff are directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of the Infringing Products using confusingly similar marks.

## COUNT II
### Federal Trade Dress Infringement (15 U.S.C. § 1125(a))
### against all Defendants

50.     Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

51.     Plaintiff's Trade Dress has priority and is entitled to protection under the Lanham Act. As discussed above, Plaintiff's Trade Dress includes the unique, distinctive, and non-functional designs and appearances of the SKINNYDIPPED® packaging. Plaintiff has extensively and continuously promoted and used such Trade Dress in the United States. Through that extensive and continuous use, Plaintiff's Trade Dress has become a well-known indicator of the origin and quality of Plaintiff's products, and it has acquired substantial secondary meaning in the marketplace. Moreover, Plaintiff's Trade Dress had acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's Trade Dress in connection with the Infringing Products.

52.     Defendants' unauthorized use of Plaintiff's Trade Dress and/or colorable imitations thereof is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Infringing Products, by creating the false and misleading impression that

the Infringing Products are manufactured by, authorized by, or otherwise associated with Plaintiff, in violation of §43(c) of the Lanham Act, 15 U.S.C. § 1125(a).

53.     On information and belief, Defendants' violation has been intentional, willful, and malicious. Defendants' bad faith is evidenced by the striking similarity between the Infringing Products packaging and Plaintiff's Trade Dress, as well as Defendant's prominent use of the word "SKINNY" on its labeling, the use of "SKINNY DIPS", "#SKINNYDIPED", and "#SKINNYDIPPED ALMONDS" on TBN's Instagram promotions, and Defendants' continuing willful disregard for Plaintiff's rights.

54.     Defendants' use of Plaintiff's Trade Dress and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's Trade Dress and products

55.     Plaintiff is entitled to injunctive relief and to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1125(a), 1116, and 1117.

## COUNT III
### Federal Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a)) against all Defendants

56.     Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

57.     Plaintiff's SKINNYDIPPED® Trademarks have priority and are entitled to protection under the Lanham Act.

58.     Defendants' use of the ALMOND DIPS, CASHEW DIPS, and HAZELNUT DIPS marks (as well as the design of their packaging and manner in which they promote and

market the Infringing Products) is likely to cause confusion, mistake, or deception as to the affiliation, connection, and/or association of Defendants with Plaintiff and as to the origin, sponsorship, and/or approval of the Infringing Products, by creating the false and misleading impression that the Infringing Products are manufactured by, authorized by, or otherwise associated with Plaintiff, in violation of §43(c) of the Lanham Act, 15 U.S.C. § 1125(a).

59.     On information and belief, Defendants' violation has been intentional, willful, and malicious. Defendants' bad faith is evidenced by the striking similarity between the Infringing Products packaging and Plaintiff's Trade Dress, as well as Defendant's prominent use of the word "SKINNY" on its labeling, the use of "SKINNY DIPS", "#SKINNYDIPED", and "#SKINNYDIPPED ALMONDS" on TBN's Instagram promotions, and Defendants' continuing willful disregard for Plaintiff's rights.

60.     Defendants' use of Plaintiff's SKINNYDIPPED® Trademarks and/or colorable imitations thereof has caused and, unless enjoined, will continue to cause substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's products.

61.     Plaintiff is entitled to injunctive relief and to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 15 U.S.C. § 1125(a), 1116, and 1117.

## COUNT IV
### Illinois Deceptive Trade Practices 815 ILCS § 510 et seq
### Against all Defendants

62.     Plaintiff repeats the foregoing allegations and incorporates the paragraphs above by reference herein.

63.     Plaintiff's SKINNYDIPPED® Trademarks and Trade Dress are entitled to protection under the common law of Illinois.

64.     Plaintiff has extensively and continuously promoted and used its SKINNYDIPPED® Trademarks and Trade Dress for years in the United States and the State of Illinois. As a result of this, Plaintiff's SKINNYDIPPED® Trademarks and Trade Dress have become well-known indicators of the origin and quality of Plaintiff's products, and Plaintiff's Trade Dress acquired substantial secondary meaning in the marketplace. In addition, Plaintiff's Trade Dress acquired this secondary meaning before Defendants commenced their unlawful use of Plaintiff's Trade Dress (or any colorable imitation thereof) in connection with their infringing products.

65.     Defendants' unauthorized use of marks and packaging that are confusingly similar to Plaintiff's SKINNYDIPPED® Trademarks and Trade Dress violates the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510 et seq., by palming off/passing off their products as those of Plaintiff, by simulating Plaintiff's Trade Dress in an intentional manner that is likely to cause consumer confusion as to origin and/or sponsorship/affiliation of Defendants' products, and by creating the false and misleading impression that their infringing products are manufactured by, authorized by, or otherwise associated with Plaintiff.

66.     On information and belief, Defendants' violation has been intentional, willful, and malicious.

67.     Defendants' unlawful activities have caused, and, unless enjoined, will continue to cause, substantial and irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law, including substantial and irreparable injury to the goodwill and reputation for

17

quality associated with Plaintiff's SKINNYDIPPED® Trademarks and Trade Dress and products.

68.     Plaintiff is entitled to injunctive relief, and Plaintiff is entitled to recover at least Defendants' profits, Plaintiff's actual damages, enhanced damages, costs, and reasonable attorney fees under at least 815 ILCS § 510.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

(1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all others acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily and permanently enjoined and restrained from:

a. using Plaintiff's Trade Dress or any reproductions, copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's Trade Dress;

b. using Plaintiff's SKINNYDIPPED® Trademarks or any reproductions, copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product or is not authorized by Plaintiff to be sold in connection with Plaintiff's SKINNYDIPPED® Trademarks;

c. passing off, inducing, or enabling others to sell or pass off any product as a genuine product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale using Plaintiff's SKINNYDIPPED® Trademarks or Trade Dress (or any colorable imitation thereof);

d. committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

e. further infringing the SKINNYDIPPED® Trademarks or Trade Dress and damaging Plaintiff's goodwill;

f. otherwise competing unfairly with Plaintiff in any manner;

g. manufacturing, shipping, delivering, importing, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which use Plaintiff's SKINNYDIPPED® Trademarks or Trade Dress, or any reproductions, copies or colorable imitations thereof;

h. using, linking to, transferring, selling, exercising control over, or otherwise owning the Amazon marketplace accounts being used to sell or as the means by which Defendants could continue to sell Infringing Products; and

i. operating any online social media or online marketplace account or websites that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product using Plaintiff's SKINNYDIPPED® Trademarks or Trade Dress, or any reproductions, copies or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff.

(2) Entry of an Order against those in privity with Defendants and those with notice of

the Injunction, and that the same shall:

a. disable and cease providing services for any accounts through which Defendants engage in the sale of Infringing Products, including any accounts associated with the Defendants;

b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of the Infringing Products; and

c. take all steps necessary to prevent links to the Defendant domain names and storefronts from displaying in search results, including but not limited to removal of any links or identifiers;

(3) That Defendants account for and pay to Plaintiff all profits realized by Defendants by

reason of Defendants' unlawful acts herein alleged, and that the amount of damages for

infringement of Plaintiff's trade dress be increased by a sum not exceeding the statutory

limit;

(4) That Plaintiff be awarded its reasonable attorneys' fees and costs pursuant to 17

U.S.C. §§ 505 and 1117;

(5) Both pre-judgment and post-judgment interest; and

19

(6) Award any and all other relief to Plaintiff that this Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues triable as of right to a jury. Fed. R. Civ.

P. 38.

February 28, 2022                                    Respectfully submitted,


_/s/ Ryan M. Kaiser_____
KAISER IP, LLC
800 Roosevelt Road
Building B, Suite 230
Glen Ellyn, IL 60137
(773) 474-8271
ryan@kaiserip.com